421 A.2d 664

Susan M. SHANAMAN, James H. Cawley, Michael Johnson and Linda C. Taliaferro, Commissioners of the Pennsylvania Public Utility Commission, Appellant,

v.

YELLOW CAB COMPANY OF PHILADELPHIA, Appellee.

Supreme Court of Pennsylvania.

Argued Sept. 29, 1980.

Decided Oct. 31, 1980.

Joseph J. Malatesta, Jr., Chief Counsel, Daniel P. Delaney, Harrisburg, Mark C. Stephenson, Asst. Counsel, Philadelphia, for appellant.

Nathan L. Posner, Jeffrey B. Albert, Fox, Rothschild, O'Brien & Frankel, Philadelphia, for appellee.

## OPINION OF THE COURT

LARSEN, Justice.

On June 19, 1980, Act 69 of 1980 (an act amending the Public Utility Code, 66 Pa.C.S. § 1103) was signed into law

by Governor Thornburgh and took effect on that date. Act 69 was intended to increase, in expedited fashion, the availability of taxicab service in "cities of the first class," i.e., Philadelphia. The legislature found the present service in Philadelphia "wholly inadequate" (Preamble to Act 69) to meet present needs, and gave the Pennsylvania Public Utility Commission (PUC), the appellant, the authority to grant, without hearing, immediate temporary operating certificates of public convenience for taxicab service, subject to further investigation before a permanent certificate would be granted. 66 Pa.C.S. § 1103(c)(4). Additionally, Act 69 provides:

The transfer of a certificate of public convenience, by any means or device, *shall be subject to the prior approval of the commission which may in its sole or peculiar discretion as it deems appropriate*, attach such conditions, including the appropriate allocation of proceeds, *as it may find to be necessary or proper.* (emphasis added) 66 Pa.C.S. § 1103(7).

On July 10, 1980, a joint application for the transfer of a certificate of public convenience to operate a taxicab in Philadelphia was filed by Yellow Cab of Philadelphia, appellee, and Duke Cab Company. The application requested the PUC to expedite the approval of the transfer of the right to operate one taxicab (Yellow Cab has authority to operate 800 taxicabs in Philadelphia) to Duke Cab Company.

Only eight days later, on July 18, 1980, Yellow Cab initiated the instant proceeding by filing with the Commonwealth Court a complaint in equity requesting that court, *inter alia*, to direct the PUC to process the transfer application on an expedited basis. A hearing on this complaint was held on July 22, 1980, following which the Commonwealth Court issued the following preliminary injunction:

NOW July 22, 1980, it is hereby ordered as follows: 1. The Pennsylvania Public Utility Commission shall, on or before September 1, 1980, enter its decision on the application of Yellow Cab Company of Philadelphia to transfer one operating right or certificate to Duke Cab Company, Inc.

2. In all other respects, Yellow Cab Company of Philadelphia's motion for preliminary injunction is denied.

The PUC has appealed this order. For the reasons stated below, we reverse that order and dissolve the injunction.

■ Our standard of review of preliminary injunctions is well settled.

> As a preliminary consideration, we recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree *or that the rule of law relied upon was palpably erroneous or misapplied* will we interfere with the decision of the Chancellor. . . . In order to sustain a preliminary injunction, *the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the injunction is not granted.* . . .

*Bell v. Thornburgh*, 491 Pa. 263, 267, 420 A.2d 443, 445 (1980). (citations omitted). Further, a *mandatory* preliminary injunction, such as is involved here, "should be used only in rare cases and certainly more sparingly than one which is merely prohibitory." *Roberts v. School Board of the City of Scranton*, 462 Pa. 464, 469–70, 341 A.2d 475, 478 (1975). Also, the mandatory preliminary injunction is designed to *restore* the status quo to the "last actual, peaceable [and] noncontested status which preceded the pending controversy." *Commonwealth v. Coward*, 489 Pa. 327, 342, 414 A.2d 91, 99 (1980) (quoting *Commonwealth v. Cohen*, 150 Pa.Super. 487, 489, 28 A.2d 723, 724 (1942)). Applying these principles to the instant case, it is apparent the preliminary injunction was improper.

■ The Commonwealth Court made no finding with respect to Yellow Cab's, the plaintiff's, right to relief (i.e., the legal right to expedite their application for transfer). If no

such right exists, the preliminary injunction should not have been granted. No such right exists.[1]

■ Act 69 gave the PUC *broad* discretion to approve or disapprove the transfer of a certificate of public convenience. Certainly nothing in the language of section 7, 66 Pa.C.S. § 1103(c)(7), *see* text *supra*, can be read to place time constraints on PUC proceedings on transfer applications. Act 69 does contemplate that the PUC will give priority generally to the taxicab service in Philadelphia, but it does not purport to, or even suggest that, transfer applications should receive priority over new applications for certificates.

Rather, Act 69 directs the PUC to "issue promptly such additional certificates as are necessary to insure that 1,400 taxicabs have authority to operate. . . ." To achieve this goal, the PUC has decided to process applications, whether for new certificates or for transfer, on a chronological basis in order of filing. Some applications date back to 1975. This agency decision is an eminently reasonable one, and Yellow Cab has not introduced one iota of evidence to indicate their transfer application should receive special consideration over all other previous applications. Yellow Cab and the PUC stipulated that Yellow Cab would suffer immediate and irreparable harm if the preliminary injunction were ·not granted, but there has been no attempt to demonstrate that any such harm would be unique to Yellow Cab. It can be reasonably assumed that similar harm would attend delays in processing for *all* applicants and that the harm would be proportionate to the time period elapsed between filing of an application and final PUC action upon it.

From the foregoing, Yellow Cab has failed to demonstrate *any* legal or factual right to the relief requested.

■ Moreover, as noted, the purpose of a mandatory preliminary injunction is to *restore* the status quo to the last

1. Of the three requisite elements, the Commonwealth Court made a finding of only the irreparable harm and immediate need for relief, but failed to even discuss Yellow Cab's right to the requested relief.

actual and noncontested status which preceded the pending controversy. Despite Yellow Cab's protestations to the contrary, the preliminary injunction herein has disrupted, rather than restored, the status quo. The status quo is: Yellow Cab holds a certificate of public convenience, wishes to transfer that certificate to Duke Cab Company, and must pursue normal PUC procedures for transfer. The preliminary injunction has imposed a duty on the PUC to accelerate its procedure for one particular application, thus granting that application exalted status as compared with all other applications. It is fiction to suggest, as does Yellow Cab, that the mandatory preliminary injunction "restored the status quo."

Yellow Cab has also cited numerous federal court cases for the proposition that "a party may obtain relief against undue or improper delay in the action of an administrative agency." Brief for Appellee at 13, *citing, e.g., Smith v. Illinois Bell Telephone Co.,* 270 U.S. 587, 46 S.Ct. 408, 70 L.Ed. 747 (1926). We have no quarrel with this argument, but find it impossible on this record to establish *any* delay, let alone any undue or improper delay. Yellow Cab filed its complaint in equity a *mere 8 days* after the joint application for transfer was filed. The hearing on the complaint was held *only 12 days* after the joint application was filed. It is simply *unreasonable* for Yellow Cab to expect to have their application considered within 12 days of its filing, especially in light of the hundreds of applications which preceded its own.

Accordingly, the order of the Commonwealth Court is reversed and the preliminary injunction is dissolved.

NIX, J., filed a dissenting opinion.

KAUFFMAN, J., filed a dissenting opinion.

NIX, Justice, dissenting.

This appeal raises two fundamental questions: a) what is the legal right protected by the court below in its issuance of the preliminary injunction under review, and b) what is the

status quo to be maintained pending final adjudication of this equity claim.

The preliminary injunction granted by the Commonwealth Court addresses an extraordinary situation. Yellow Cab Company of Philadelphia (Yellow Cab), appellee, is the largest taxicab company operating in the first class city of Philadelphia. Shanaman, et al, Commissioners of the Pennsylvania Public Utility Commission (PUC), appellant, has been given the duty to decide whether or not a transfer of a certificate of public convenience for the operation of a taxicab in first class cities may be made.[1] PUC, under that enabling section, has broad discretion in the imposition of conditions for the granting of approval. On July 10, 1980 appellee and its proposed transferee, Duke Cab Co. (Duke), formally requested appellant to approve the transfer of one certificate of public convenience (sometimes called an "operating right"). Yellow Cab has some eight hundred certificates and is presently a debtor–in–possession pursuant to Chapter XI of the Federal Bankruptcy Act.[2] After appellant refused to docket the application, appellee filed a complaint in equity against appellants in the Commonwealth Court seeking a preliminary and permanent injunction directing appellant to process the transfer application and to immediately issue temporary operating authority to Duke. The Commonwealth Court issued an order requiring PUC to enter its decision on the application for approval of transfer on or before September 1, 1980. All other relief requested by Yellow Cab was denied. Appellant appealed to this

1. 66 Pa.C.S.A. § 1103, as amended by Act 69 of 1980 provides:
   (c) Taxicabs.—

   (7). The transfer of a certificate of public convenience, by any means or device, shall be subject to the prior approval of the commission which may, in its sole or peculiar discretion as it deems appropriate, attach such conditions, including the appropriate allocation of proceeds, as it may find to be necessary or proper.

2. Appellee was granted permission by the Bankruptcy Court to sell one of its eight hundred operating rights by order dated July 8, 1980 of bankruptcy Judge William A. King, Jr. in the United States District Court for the Eastern District of Pennsylvania, in Chapter XI, No. 78–422 (WK).

Court and an order was entered by this writer extending the date for action by the PUC to October 1, 1980. On October 2, 1980, after oral argument before this Court, the order of the Commonwealth Court was stayed until further order of this Court with leave for the PUC to proceed on the merits of the application to transfer. To our knowledge, PUC has taken no action on the merits of the application for approval of transfer to date.

This case contains no controversy regarding the existence of irreparable harm to appellee. Appellant stated the PUC would not contest the issue of irreparable harm (R 82a) and subsequently stipulated that immediate and irreparable harm exists (R 130a). The $15,000.00 sale price of the certificate of public convenience, determined to have a value of from $14,000.00 to $16,000.00 by appraiser, George I. Bloom, former Chairman of the Public Utility Commission of Pennsylvania (R 112a), diminishes in value as the administrative process is delayed (R 117a). This reduces the monetary value of appellee's assets[3] and adversely affects its ability to reorganize under the supervision of the Bankruptcy Court.[4] Conversely, an effectuated sale would further

3. At that appraisal, eight hundred certificates of public convenience equal $270,000.00.

4. The substance of the testimony of James P. Sinnott, an employee of Yellow Cab Company of Pittsburgh (a wholly owned subsidiary of Checkers Motors Corporation), presently advising and serving as a management consultant with Yellow Cab of Philadelphia for Checkers Motor Sales Corporation (a creditor whose claim is secured by some of the certificates or operating rights) is as follows:

BY MR. POSNER:

Q What I am trying to find out from you, sir, is, what is the situation if we leave this court room today without any relief insofar as the position of Yellow Cab Company, and what is the position of Yellow Cab Company that we have relief here today?

A If Yellow Cab Company has no temporary relief from the court room today, they will be unable to continue more than two to two and a half weeks.

Q Why, sir?

A They are out of cash, they cannot get cash, they are operating at a deficit of three to four thousand dollars a day. There are people who are willing, if these transfers are put through, to come forth and advance money to see that this company prosper. The company can prosper if they are able to sell off the two to three hundred certificates.

the prospects of Yellow Cab's rehabilitation (Order of July 8, 1980 by Bankruptcy Judge King, paragraph 6, R 17a, 18a).

Q Now, sir, what is the prevalent feeling concerning the attitude of the P. U. C., if you know, concerning the transfer of rights?

MR. MALATESTA: Objection, Your Honor.

THE COURT: I will sustain the objection. Before me, Mr. Posner, is only one certificate, concerned with one certificate here.

MR. POSNER: That is right, sir.

THE COURT: You are getting into a lot of other matters not before me. His testimony is if you don't sell two or three hundred you are in bad shape.

MR. POSNER: I am going to lead up to that, sir.

THE COURT: But there is only one—

MR. POSNER: That is right, this one case if approved.

BY MR. POSNER:

Q What would the effect of one case being approved have upon the Yellow Cab situation, sir?

A I guess I should have stated really the one case, this test case, would be the case that would release and bring some money for continued operation and support this company and enable it to be a viable company. *Without approval of this one test case, everybody is going to think that there is no chance of Philadelphia Yellow Cab ever coming out of this situation.*

THE COURT: We are getting back into irreparable harm now.

MR. POSNER: Beg your pardon?

THE COURT: We are getting back into irreparable harm now.

MR. POSNER: I wanted to show how immediate—

THE COURT: It has been stipulated to, sir.

MR. POSNER: Then I will stop at that point, sir, if Your Honor feels that is sufficient for your purposes. Forgive me, I have been reminded that I have to ask concerning one item.

BY MR. POSNER:

Q It has been testified here today, I imagine you heard it, sir, that insurance on Yellow Cab of Philadelphia expires this Thursday I do believe.

A I heard that.

Q Can you tell the Court anything regarding that insurance and the likelihood and the possibilities concerning its renewal and under what circumstances you think it might be renewed?

A The renewal depends upon money, and the only way they are going to get additional monies is to get this test case approved, where they can go out and secure additional monies to help support and pay for the possible value of those claims.

Q Well, obviously it can't be transferred by Thursday. Any action by this Court directing an immediate hearing have that effect?

A *Favorable action by this Court would certainly open the door to change the attitude of the insurance company.*

MR. POSNER: Thank you, sir. Cross examination.

MR. MALATESTA: No questions.

(Emphasis supplied). (R 130a, 131a, 132a and 133a).

Further, during oral argument, counsel for appellant admitted the PUC will not say *when* the approval process will begin. Thus, it is clearly established that irreparable harm exists.

It is also not in issue how the PUC should decide the application for approval of transfer. The result of that discretionary function is not before this Court, nor is this Court asked to direct appellant in the details of processing an application under section 1103(c)(7). What is at issue is whether the Commonwealth Court had the power to mandate appellant to begin processing an application for approval of transfer and to proceed with reasonable diligence in processing it.

The majority would reverse the Commonwealth Court and dissolve the injunction through an artful schema grounded in a distortation of the standard of review, misidentification of the right to be enforced and an erroneous definition of the status quo to be preserved. The standard of review is as follows:

'The scope of review on an appeal from a decree either granting or denying a preliminary injunction is to examine the record only to determine if there were any *apparently reasonable grounds* for the action of the court below . . .' *Lindenfelser v. Lindenfelser*, 385 Pa. 342, 343–44, 123 A.2d 626, 627 (1956). (Emphasis supplied). *Summit Township v. Fennell*, 392 Pa. 313, 140 A.2d 789 (1958). *Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp.*, 410 Pa. 214, 215, 189 A.2d 180, 181 (1963).

*New Castle Orthopedic Assoc. v. Burns*, 481 Pa. 460, 463–64, 392 A.2d 1383, 1385 (1978), citing *John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 369 A.2d 1164 (1977).

The language of *Roberts v. School District of Scranton*, 462 Pa. 464, 341 A.2d 475 (1975), cited by the majority, sets forth the same standard. Yet the majority applies it in such an unintended and restrictive manner as to produce a new requirement of intense scrutiny of the action of the court

below. This constitutes a radical departure from the accepted principle of review enunciated by this Court in such cases and facilitates a most inequitable result, for now appellee is held to have no right to relief from the established and conceded irreparable harm.

The majority says the right in controversy is the right to expedite the application for transfer to first position in a lengthy queue of applicants for PUC action.[5] Such a characterization of the right is misleading because it (1) co-mingles applications for certificates of public convenience with applications for approval of transfer of previously issued certificates of public convenience, (2) perceives the relief granted by the court below as expediting the application for approval over other applicants and (3) identifies the right in question as a mixture of the two. This was advanced by appellant,[6] adopted by the majority opinion and is palpable error. The right in question is the right to have PUC procedure *begun*. This right should not be lumped with applications for issuance of certificates of public convenience under section 1103(c)(1). To deny the existence of such a right is to empower the PUC to effectively deny an application without employing the processes mandated by the Legislature.[7] To protect such a right does not expedite appellee over other long-suffering applicants under section 1103(c)(1). More pointedly, the failure to docket and begin to process the application for approval of transfer without any rational explanation therefor[8], given the necessity for prior approval by the PUC and the diminution of monetary value of the certificate due to delay, is tantamount to a confiscation of property. *Cf. Smith v. Illinois Bell Telephone Co.*, 270 U.S. 587, 46 S.Ct. 408, 70 L.Ed. 747 (1926);

5. Appellee's use of the word "expedite" does not include being placed ahead of other applicants for approval of transfer.

6. Brief of appellant p. 19.

7. See e.g., 66 Pa.C.S. §§ 331, 332, 333, 334 and 335.

8. There are approximately 280 or 290 applications for taxicab rights in Philadelphia presently pending with appellant, as opposed to the one application for approval of transfer (R 48a, 73a, 76a)

*White v. Matthews*, 559 F.2d 852 (2nd Cir.), *cert. denied* sub nom. *Califano v. White*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). Such lack of diligence at the initial stages of the proceedings, at least, is totally impermissible.[9] There is no reason or logic in requiring an applicant for approval of transfer to wait until all pending applications for initial issuance of certificates of public convenience are determined. The application for approval of transfer filed July 10, 1980 had not been given a number or docketed as of July 22, 1980 (R 38a, 39a), a date could not be given when the application for transfer would be processed (R 63a), yet William H. Stouch, Director of the Bureau of Non–Rail Transportation of the PUC testified he could get a [docket] number for an application "today" (R 76a) and also could delay getting the number (R 77a). Under the facts of this case to hold there was no delay because of the time lapse between the presentation of the application of transfer to the PUC and the filing of the complaint in equity is sheer sophistry.

Lastly, the majority states that the status quo to be maintained by a preliminary injunction is the "last actual, peaceable [and] noncontested status which preceded the pending controversy." For this proposition they cite *Commonwealth v. Coward*, 489 Pa. 327, 414 A.2d 91 (1980). What they ignored is that *Coward* qualified that statement by providing that it should be the lawful status not merely the de facto status.

In *Commonwealth v. Cohen*, 150 Pa.Super. 487, 489, [28 A.2d 723] (1942) the Court said: "The rule is 'that the status quo which will be preserved by preliminary injunction is the last actual, peaceable (*and, we may add, law-*

---

**9.** In the recent case of *Mattos v. Thompson*, 491 Pa. 385, 421 A.2d 190 (1980) we said, "Such [lengthy] delays are unconscionable and irreparably rip the fabric of public confidence in the efficiency and effectiveness of our judicial system." One of the purposes of administrative agencies generally is to avoid delays that would be incurred in comparable judicial proceedings. Landis, *The Administrative Process: The Third Decade*, 47 A.B.A.J. 135, 138 (1961). The length of time constituting unconscionable delay, of course, turns on the facts of the particular case.

*ful*) noncontested status which preceded the pending controversy'."

*Id.* [356 Pa.] at 407, 52 A.2d at 321. *See also Roberts v. School District of Scranton*, 462 Pa. 464, 469, 341 A.2d 475, 478 (1975).

(Emphasis supplied).

It is the fact that the status the majority seeks to sustain is unlawful that justified the Commonwealth Court in issuing a mandatory preliminary injunction.[10] Mandatory preliminary injunctions "although more sparingly granted, may be ordered where the rights of the plaintiff are clear *or* 'the defendant must change the *status of the parties while the result is pending'." Coward, supra,* at 99. (Emphasis supplied). The status quo to be mandated here is the employment of lawful, normal process by the PUC in its treatment of appellee's application for approval of transfer. Appellant must change the treatment given appellee's application while the result is pending if the court is not to promote and exacerbate the inequity it was called upon to redress. *Lex reprobat moram.* Accordingly, the PUC should have at least been required to docket this application and to expeditiously process it.

KAUFFMAN, Justice, dissenting.

The Yellow Cab Company of Philadelphia ("Yellow Cab"), operating as a debtor–in–possession under Chapter XI of the Federal Bankruptcy Act, received permission from the Bankruptcy Court to sell one of its operating certificates. On July 9, 1980, Yellow Cab entered into an agreement of sale to transfer the certificate to Duke Cab Company ("Duke"). One day later, a joint application was filed with the Public Utility Commission ("P.U.C."), requesting (1) approval by expedited review of the transfer of operating rights, and (2) temporary authority for Duke to operate under one of Yellow Cab's certificates pending final decision by the P.U.C. Through its counsel, the P.U.C. refused to

10. "All injunctions are generally processes of mere restraint. An injunction which goes beyond restraining and commands that acts be done or undone is termed 'mandatory'." 18 P.L.E., *Injunctions* § 102.

state when the application would be considered or acted upon. On July 19, 1980, Yellow Cab filed a complaint in equity in the Commonwealth Court requesting a mandatory preliminary junction ordering the P.U.C. to: (1) immediately issue temporary operating authority to Duke, and (2) process the application for transfer of operating rights in an expedited fashion.[1] The Commonwealth Court issued an injunction requiring only that the P.U.C. make a decision on the application to transfer operating rights by September 1, 1980.[2]

"The scope of review on an appeal from a decree either granting or denying a preliminary injunction is to examine the record only to determine if there were any *apparently reasonable grounds* for the action of the court below.... " *New Castle Orthopedic Association v. Burns*, 481 Pa. 460, 463–64, 392 A.2d 1383, 1385 (1978) (citations omitted). Proper disposition of the matter before us requires adherence to this very limited scope of review.

For a preliminary injunction to be appropriate, it must be established:

first, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages;

1. Yellow Cab averred in its complaint that it contemplated selling, with the permission of the Bankruptcy Court, up to 300 additional operating rights in order to raise immediate operating capital and to satisfy existing creditors. The operating rights were appraised at the hearing to have a value of $14,000 to $16,000 each. Uncontradicted testimony in the record indicated that without a rapid and substantial infusion of cash, Yellow Cab could not continue in operation. Extension of credit and other financial relief were, however, asserted to be forthcoming if the transfer in this test case was approved.

   It was represented at oral argument and substantiated by testimony at the hearing that Yellow Cab's creditors and lienholders regarded the disposition of the matter before us as a test case. Without expedited approval of the transfer herein, it was assumed that the diminished likelihood of Yellow Cab's survival would preclude the release of further operating funds, thus virtually ensuring its demise.

2. An application for Stay was brought to this Court by the P.U.C. In order to permit consideration of this matter by the full Court, Mr. Justice Nix extended the date for P.U.C. action until October 1, 1980.

   On October 2, 1980 we extended the Stay until further order, with leave for the P.U.C. to proceed on the application in the interim.

second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct. . . . And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded.

*Id.* (Citations omitted)

Irreparable harm was stipulated by the parties in Commonwealth Court. It was thus conceded by the P.U.C. that Yellow Cab had no adequate remedy at law. If denied injunctive relief, Yellow Cab effectively had no means of ensuring that the transfer would be considered at any particular time in the future, and no means of obtaining compensation for damages resulting from delay.

Implicit in the above is satisfaction of the second requirement, that refusal of the injunction would cause substantially greater harm than the grant thereof. For the P.U.C., an expedited review would cause, at worst, administrative inconvenience. Even this is speculative since the P.U.C. failed to introduce any evidence of harm that it might suffer if the preliminary injunction were granted. The majority makes no suggestion that any substantial harm, much less irreparable harm, would result from a grant of injunctive relief.

Yellow Cab offered uncontradicted evidence that if Duke were not granted temporary operating rights in the interim, any delay in administrative proceedings would cause a corresponding decrease in the value of the certificate. The majority blithely assumes that "similar harm would attend delays in processing for *all* applicants . . ." (Majority opin. p. 666). It is irresponsible, however, to ignore Yellow Cab's critical financial condition. A solvent business, or one about to begin operation, can and ordinarily does allow for bureaucratic delay in licensing and other matters as a cost of doing business. The orderly function of the business enterprise can, in fact, be staggered to accommodate delays of this nature so that they cost little or nothing. Yellow Cab, however, is in no position to make allowances for the unhurried pace of the P.U.C.'s administrative proceedings. As

Yellow Cab is currently operating under Chapter XI of the Federal Bankruptcy Act, the continuous decline in the value of one of its principal assets may threaten its status as an ongoing business entity, to the extreme detriment not only of the company but of the public as well. Yellow Cab has no means of suspending the decline in value of the certificate in order to preserve its own financial condition while awaiting the deliberations of the P.U.C. The P.U.C. refused to make any assurance whatsoever of *any* specific limit on the time required to process the applications. It is possible, if not probable, that Yellow Cab's ability to reorganize under the supervision of the Bankruptcy Court would collapse long before the P.U.C. finds the opportunity to render a decision.

In consequence, and contrary to the simplistic assertion of the majority, it is far from "fiction" to suggest that a mandatory preliminary injunction would restore or maintain the "status quo," the third requirement for the issuance of injunctive relief. The order was designed to forestall any further wasting of Yellow Cab's assets attributable to administrative delay. It was the only way to ensure that Yellow Cab's viability would not be adversely affected thereby. The "status quo" is altered with each day that passes while Yellow Cab's resources dwindle unchecked. If Yellow Cab is no longer in existence when the P.U.C.'s decision is rendered, the "status quo" will have been effectively destroyed. The narrow view of the majority simply ignores the fiscal background against which this transfer application occurred. To evaluate the "status quo" by focusing solely on routine administrative transactions is hopelessly short–sighted.

The majority summarily dismisses the pertinence of authority to the effect that a party may obtain relief against undue or improper delay in the action of an administrative agency, reasoning that Yellow Cab could not have suffered undue delay in view of the fact that it filed its complaint in equity only 8 days after the joint application for transfer.[3]

---

**3.** This analysis overlooks the fact that prior to Yellow Cab's efforts to obtain injunctive relief, the P.U.C. rejected its reasonable requests

An injunction, however, is always prospective in effect. It is always a prophylactic measure, whether or not the harm in question includes past activity. The very purpose of its availability is the avoidance of harm which has not yet occurred but which, as here, is determined by a Court in Equity to be inevitable in the absence of prospective relief.

Moreover, under the reasoning of the majority's opinion, it would not matter in the slightest whether Yellow Cab had waited 8 weeks or even 8 months. The opinion notes, in support of the supposed fairness of the P.U.C.'s approach to the matter at hand, that some applications date back to 1975. It is thus hard to imagine when, if ever, Yellow Cab would be able successfully to assert a claim of unreasonable delay under the rationale of the majority.

The P.U.C. made it abundantly clear that Yellow Cab's application would not be considered before the end of 1980, and made no guarantee that it would be processed soon thereafter. In the face of its own financial deterioration, Yellow Cab had no choice but to initiate immediate remedial procedures necessary to prod the P.U.C. into acting without delay. The very promptness of Yellow Cab's action lends credence to the urgency of the situation, and supports, rather than weakens, the complaint in equity. It evidences the fragile nature of the "status quo" from Yellow Cab's viewpoint. Surely, the majority would not suggest that Yellow Cab should wait until it teeters on the brink of disintegration before praying for relief. In view of the fact that irreparable harm was stipulated by the parties, a mandatory injunctive remedy would be useless unless invoked by immediate, preventive action.

The premise which underlies the majority's entire argument is that Yellow Cab made no demonstration of a "right to relief," which, although not an enumerated requirement, is a linchpin for the availability of an injunctive remedy. But a "right" to relief in equity is frequently evanescent. It is, by definition, not an explicit legal right. It need not be

to adopt a definite schedule for the consideration and disposition of its application.

found in an external source such as statutory or common law. The "right" to injunctive relief can grow out of the circumstances by which the enumerated requirements are satisfied. The majority, however, comes to the unacceptable conclusion that the complainant in equity here must suffer irreparable harm, the existence of which has been stipulated, without a remedy.

I would concede that in the present case Yellow Cab has requested extraordinary treatment. The case for a "right" to such treatment can only be made out of the potential consequences flowing from the denial thereof. The P.U.C. is not, of course, responsible for the current insolvency of Yellow Cab. But as the agency legislatively designated responsible for the improvement of taxicab service in Philadelphia, the P.U.C. would clearly fail in its mandate if it were to expedite the demise of the largest cab company in the city. In truth, the remedy obtained below should have been unnecessary. The P.U.C.'s inexplicable intransigence in the face of Yellow Cab's financial difficulties, however, effectively passed responsibility for the adequacy of Philadelphia's taxi service into the hands of the Commonwealth Court. The Court's only means of fulfilling that responsibility was to find a right to relief and fashion an equitable remedy, consisting of nothing more than an order ensuring review within a reasonable time.

The majority pays lip service to the extremely narrow scope of our review of such an order, but has evaluated Yellow Cab's claim as if *de novo*. The Commonwealth Court, in considering the full scope of this matter, decided that the case for relief was sufficient to make its order proper and necessary. Whether any member of this Court would have found otherwise in similar circumstances is not the question here. If we can find any reasonable grounds for the decree, we must not interfere with the decision of the lower court.

The Commonwealth Court made a realistic and fair assessment of the competing interests here. As the basic requirements for injunctive relief are clearly present, under our

narrow standard of review, the wisdom of the Commonwealth Court should remain undisturbed. Accordingly, I would affirm the order below.[4]

4. Testimony in the record indicated that the time required to process a similar application ordinarily would be no more than 47 days and, as the actual substantive review requires only 4 to 6 days, could be significantly reduced with little difficulty. The Commonwealth Court Order was filed July 22, well over 47 days ago, and the P.U.C. has been free to begin its disposition of this matter. As the deadlines for decision imposed by both the initial order and our original extension, respectively September 1 and October 1, have now passed, I would at this time mandate *complete* review of Yellow Cab's application within 30 days of the date of this opinion.