MIDDLESEX NEUROLOGICAL ASSOCIATES, INC. vs.
DAVID J. COHEN.

Middlesex.    May 14, 1974. — March 21, 1975.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Contract,* Of employment, Agreement not to compete, Performance and
breach.  *Physician,* Agreement not to compete.  *Equity Pleading
and Practice,* Master: findings.

In a suit in equity to enforce a covenant not to compete contained in
a written employment contract, this court did not consider the de-
fendant's contention that the parties were bound by a previous oral
agreement which did not include the restrictive covenant where a
master made no findings with respect to the terms of the oral under-
standing or whether they constituted a legal contract and the defend-
ant made no motion to recommit for the purpose of making such
findings. [128-129]
An employment contract which entitled the employee to compensation
for 60 days following unilateral termination by the employer without
cause did not entitle the employee to that compensation after the
contract was terminated by mutual agreement. [129-130]
A covenant in an employment contract restricting a neurologist from
competing with his former employer, a neurosurgeon, in Malden and
surrounding communities, an area which exceeded 250,000 in popu-
lation, was not unreasonably broad where the employer actively
practiced throughout the area. [130]
Enforcement of a covenant in an employment contract restricting a
neurologist from competing with his employer, a neurosurgeon, was
not contrary to public policy where several other neurologists and
neurosurgeons practiced in the area and no patients suffered due to
the unavailability of a neurologist. [130-131]
A time restriction in a covenant by a neurologist not to compete with
his employer for two years after termination of the employment was
reasonable despite a one-year term of employment and a sixty-day
termination provision in the employment contract. [131]
In a suit in equity brought by a neurosurgeon to enforce a covenant
not to compete against his former employer, a neurologist, there
was no merit to a contention that the covenant was not necessary
for the economic protection of the plaintiff inasmuch as he had suf-
fered little, if any, loss in volume of business after the employment
was terminated where the defendant had been treating former pa-
tients of the plaintiff and had accepted referrals from doctors who
formerly made referrals to the plaintiff. [131-132]

BILL IN EQUITY filed in the Superior Court on June 2, 1972.
The suit was heard by *J. P. Sullivan, J.*
*Allan van Gestel* for the defendant.
*Ira D. Feinberg* for the plaintiff.

ARMSTRONG, J.   This is a bill in equity to enforce a restrictive covenant by enjoining the defendant, a physician specializing in neurology, from practicing his specialty in Malden and surrounding communities and in various named hospitals. Both parties have appealed from a final decree, entered on a master's report, enjoining the defendant from such practice substantially in the words of the covenant.[1] The defendant has also appealed from an interlocutory decree sustaining one of the plaintiff's objections to the master's report, overruling the defendant's objections thereto, and confirming the report as modified.

The master's subsidiary findings, which are no longer challenged, establish that the plaintiff's assignor, a neurosurgeon named Fusillo, engaged in discussions with the defendant in the summer and fall of 1971 which led to an oral understanding that the defendant would associate with Fusillo in the practice of neurology in Malden and vicinity, where Fusillo had been in practice since 1963. The association began on November 6, 1971. About a week later, Fusillo asked the defendant to sign an "employment agreement," which stated that it represented the entire agreement of the parties and contained the restrictive covenant. The defendant expressed reluctance to sign it but, after consulting with an attorney, did so. The plaintiff corporation, of which Fusillo is president and sole stockholder, was chartered on December 3, 1971, and Fusillo assigned the

---

[1] The covenant by its terms restricted the defendant for "two (2) years after termination of this Agreement," and the injunction imposed by the final decree was to have expired on May 8, 1974, before the appeal was heard. The case is not moot, however, because the parties entered into stipulations that the injunction be suspended pending final determination of this appeal and, if the final decree should be affirmed, reinstated for a period of two years from the entry of a final decree after rescript.

employment agreement to it on December 7. No contention is made that the defendant, who, under the agreement, was employed for a one-year period only and was salaried, did not consent to the assignment.

During the period of his association with Fusillo, the defendant treated Fusillo's patients both at Fusillo's office and in area hospitals. He was recommended by Fusillo for staff privileges at those hospitals. The association had barely commenced, however, when the two men started to disagree about everything from office procedure to patient care. On May 8, 1972, they met and agreed to terminate their association effective at once. Fusillo indicated at that meeting that he intended to hold the defendant to the restrictive covenant.

The terms of the restrictive covenant are set out in the margin.[2] There is no question that the defendant violated them in every respect as soon as he ended his association with Fusillo. Having in mind that "a covenant inserted in a contract for personal service restricting trade or competition or freedom of employment is not invalid and may be enforced in equity provided it is necessary for the protection of the employer, is reasonably limited in time and space, and is consonant with the public interest" (*Novelty Bias Binding Co.* v. *Shevrin,* 342 Mass. 714, 716 [1961]), we proceed to consider the defendant's arguments as to why we should not enforce the restrictive covenant in this case.

1. The defendant's first argument is that the covenant should not be enforced because there was no consideration

---

[2] "(11) For a period of two (2) years after the termination of this Agreement, the Employee agrees not to solicit business from, nor engage in the practice of medicine, in the specialty of neurology, directly or indirectly, nor read EEG findings in ... [various named hospitals]. The Employee further agrees that for a period of two (2) years from the date of termination of this Agreement he will not open an office for the practice of medicine in the specialty of neurology, directly or indirectly, nor associate with any physician or professional medical corporation for the purpose of practicing said specialty of neurology, directly or indirectly, in or within a radius of five (5) statute miles from the borders of the City of Malden, Massachusetts."

given to make it binding. In particular, he asserts that the oral understanding under which the parties began their association was a binding contract the same in all respects as the written contract, except that the latter included the covenant. The master's findings, however, do not support the contention; there are no findings establishing what the terms of the oral understanding were or whether they constituted a legal contract. The defendant made no motion to recommit for the purpose of making such findings. See *Lombardi* v. *Bailey*, 336 Mass. 587, 595-596 (1958); *Rankin* v. *New York, N. H. & H. R.R.* 338 Mass. 178, 188 (1958); *Rix* v. *Lowell Gas Co.* 1 Mass. App. Ct. 854 (1973). Under the circumstances our consideration must be confined to the findings appearing in the master's report. *Chopelas* v. *Chopelas*, 303 Mass. 33, 36 (1939). *Minot* v. *Minot*, 319 Mass. 253, 258-259 (1946). *Anderson Corp.* v. *Blanch*, 340 Mass. 43, 49 (1959).

2. The defendant's next contention is that the plaintiff is not entitled to specific performance because it has not lived up to its obligation under the employment agreement to pay the defendant for the sixty-day period following termination of the agreement. We read the provision in question[3] differently. The defendant's right to compensation for those sixty days, if he did not continue to work (as was the fact), would have arisen, in our opinion, upon unilateral termination by the employer without cause and without a request that the defendant continue to render his services. The master's finding that the association was terminated by mutual agreement made the provision inapplicable. We note also that there is no suggestion in the

_____

[3] "(8) Without cause, the Employer may terminate this Agreement at any time upon sixty (60) days' written notice to the Employee. In such event, the Employee, if requested by the Employer, shall continue to render his services and shall be paid his regular compensation to the date of termination. Without cause, the Employee may terminate this Agreement upon sixty (60) days' written notice to the Employer. In such event, the Employee shall continue to render his services and shall be paid his regular compensation to the date of termination, but no severance allowance shall be paid to him."

record before us that the defendant claimed such compensation at any time before this litigation commenced.

3. The defendant further contends that the restrictive covenant is unreasonably broad in its territorial coverage. The master's general finding to the contrary was a conclusion based on his subsidiary findings from which this court may draw its own conclusions. *O'Brien* v. *Dwight,* 363 Mass. 256, 281 (1973). *Peters* v. *Wallach,* 366 Mass. 622, 626 (1975). *Erickson* v. *Waltham,* 2 Mass. App. Ct. 436, 438 (1974). The defendant's argument is addressed to the inclusion in the restriction of the entire "Malden, Melrose, Wakefield, Everett, Winchester, Stoneham community," which, according to the defendant's brief, exceeds 250,000 in population.[4] In view of the master's finding that Fusillo actively practices throughout the area, the covenant's territorial scope is not broader than the plaintiff's legitimate interests require. *Marine Contractors Co. Inc.* v. *Hurley,* 365 Mass. 280, 289 (1974). Nor can the defendant successfully contend (based largely on the master's gratuitous recitation of evidence supporting the contrary of certain of his findings) that the medical needs of the area are such that enforcement of the restrictive covenant would be contrary to public policy. The master's findings, supported by the evidence reported on one of the defendant's objections, established that several neurologists and neurosurgeons other than Fusillo and the defendant practice (although not exclusively) in the area, and that no patients have suffered due to the unavailability of a neurologist. The defendant skirmishes with the idea of contending that restrictive covenants in medical employment contracts are invalid per se and that public policy forbids any restriction on the ability of a community to employ the unique skills

---

[4] No contention is made that the restrictive covenant is overbroad because it extends to areas, such as Cambridge, Somerville, and major sections of Boston, outside the area in which Fusillo apparently practices. Perhaps the defendant does not read the covenant that way, or perhaps he feels that that aspect of the restriction is of no practical concern to him. We confine our consideration to what has been argued. *O'Brien* v. *Dwight,* 363 Mass. 256, 282 (1973).

of a physician. Absent some argument and discussion of authorities by the defendant, we do not feel called upon to consider such a contention, especially as the tendency of authority seems to the contrary. See *Gilman* v. *Dwight*, 13 Gray 356 (1859); *Dwight* v. *Hamilton*, 113 Mass. 175 (1873); and Corbin, Contracts, § 1393 (1962).

4. The duration of the restriction was reasonable. The good will sought to be protected by the restrictive covenant was of long-term significance, relating not only to Fusillo's patients during the period of employment but also to the medical community from which a neurologist must derive patients by referral. The one-year term of employment and the sixty-day termination provision do not make the longer period of restriction unreasonable. *All Stainless, Inc.* v. *Colby*, 364 Mass. 773, 778-779 (1974).

5. Supported by a general finding of the master, the defendant argues that enforcement of the restrictive covenant is not necessary for the economic protection of the plaintiff. The general finding was apparently based on subsidiary findings to the effect that during the half year (roughly) of their association Fusillo and the defendant together averaged nine hospital consultations per week, and during the half year thereafter Fusillo alone averaged five; that during the first period the two doctors together saw an average of eleven new patients per week, and during the second period Fusillo averaged nine and one half; that during the first period the two doctors together saw 688 patients, and in the six and one half month period after the association terminated, Fusillo saw 788; and that during the association gross billings totaled $60,957.68, compared to gross billings by the plaintiff of $48,688.50 during the six and one half months after the defendant left.

The trial judge at the plaintiff's instance struck the general finding from the master's report. There was no error. The judge was not bound by the master's conclusion, for the reasons mentioned in part 3, *supra*, relative to our review. He could, and evidently did, draw a conclusion contrary to that of the master from the latter's subsidiary findings.

We concur in the judge's conclusion. The subsidiary findings do not establish that the plaintiff has not suffered some loss in gross volume of business. The defendant's assumption that the defendant was the source of half of the volume of business during the six months of association lacks a priori validity and is not buttressed by findings concerning Fusillo's volume of business in the six months preceding the association. But even if the subsidiary findings did establish that the plaintiff has suffered no loss in volume of business, that without more would not establish that the plaintiff has not suffered a loss of the good will which it is the lawful purpose of the covenant to protect. *All Stainless, Inc.* v. *Colby*, 364 Mass. 773, 780 (1974). *Marine Contractors Co. Inc.* v. *Hurley*, 365 Mass. 280, 287-288 (1974). *National Hearing Aid Centers, Inc.* v. *Avers*, 2 Mass. App. Ct. 285, 289-290 (1974). On the contrary, the master's findings that the defendant has been treating former patients of the plaintiff and has accepted referrals from doctors who formerly made referrals to the plaintiff suggest loss of good will in fact.

What has been said disposes of the issues raised by the defendant's appeals. It follows that the restriction to which the defendant agreed should be enforced.

The plaintiff has agreed that a decision favorable to it on the defendant's appeals should result in waiver of its appeal, and the plaintiff's appeal is accordingly deemed waived. The interlocutory decree confirming the master's report is affirmed. The final decree is to be modified in accordance with the stipulations of the parties in this court, and, as so modified, is affirmed.

*So ordered.*