392 A.2d 1383

NEW CASTLE ORTHOPEDIC ASSOCIATES

v.

John T. BURNS, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 19, 1978.

Decided Nov. 1, 1978.

Richard J. Mills, Spencer D. Hirshberg, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, for appellant.

Irving M. Portnoy, Litman, Litman, Harris & Specter, P. A., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

NIX, Justice.

Appellant Burns, a medical doctor specializing in orthopedics, entered into an employment contract with appellee New Castle Orthopedic Associates (Orthopedic) in November, 1975. Orthopedic is a professional association of four doctors located in Lawrence County. The employment agreement provided for Dr. Burns' employment for one year beginning January 1, 1976, at an annual compensation of $60,000. It contained the following covenant not to compete:

"In the event that Burns leaves the employment of Orthopedic on or before January 1, 1977, . . . Burns agrees that he will not practice medicine and/or orthopedics in any form whatsoever in Lawrence County, Pennsylvania, for a two (2) year period after terminating his employment with Orthopedic."

In November, 1976, Dr. Burns expressed dissatisfaction with his relationship with Orthopedic and indicated that he would seek other employment. A new contract was negotiated and executed on December 30, 1976, providing for a five month period of further employment beginning January 1, 1977, at a monthly salary of $7,500, or $2,500 more than Dr. Burns' previous monthly salary. The new contract expressly nullified all obligations under the former employment contract and also contained the following covenant not to compete:

"In the event the employment of Employee, as provided for hereunder is terminated for any reason whatsoever, the Employee expressly agrees that he will not practice medicine and orthopedics in any form whatsoever in Lawrence County, Pennsylvania, for a two year period after the termination of his employment with the Employer."

Pursuant to a clause allowing either party to terminate the new contract on two weeks' notice, Dr. Burns resigned from Orthopedic effective March 28, 1977. He thereafter opened his own office in Lawrence County and began to practice medicine and orthopedic surgery on his own behalf. Orthopedic brought this action in equity against Dr. Burns seeking specific enforcement of the covenant and sought a preliminary injunction. The preliminary injunction was granted on May 13, 1977, following a hearing at which both parties were present and represented by counsel. The Superior Court affirmed *per curiam* without opinion with one Judge noting a dissent. We granted review and now reverse the grant of the preliminary injunction.

The standard by which we review the propriety of the issuance of a preliminary injunction limits equitable relief to instances where it is established that a subsequent award of damages would be inadequate to compensate the loss suffered by a plaintiff who has prima facie established a clear right of recovery. At all times it must be remembered that a preliminary injunction seeks to maintain the status quo until the rights of the parties can be finally adjudicated. In the case of *Herman v. Dixon*, 393 Pa. 33, 141 A.2d 576 (1958), we stated:

> Since a preliminary injunction is somewhat like a judgment and execution before trial, it will only issue where there is an urgent necessity to avoid injury which cannot be compensated for by damages and should never be awarded except when the rights of the plaintiff are clear. Also, it should in no event ever be issued unless greater injury will be done by refusing it than in granting it.

*Id.*, 393 Pa. at 36–37, 141 A.2d at 577. More recently, we reaffirmed this principle in *John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 369 A.2d 1164 (1977), where we said:

> "The scope of our review on an appeal from a decree either granting or denying a preliminary injunction is to examine the record only to determine if there were any *apparently reasonable grounds* for the action of the court

below . . . ." *Lindenfelser v. Lindenfelser*, 385 Pa. 342, 343–44, 123 A.2d 626, 627 (1956). (Emphasis supplied). *Summit Township v. Fennell*, 392 Pa. 313, 140 A.2d 789 (1958). *Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp.*, 410 Pa. 214, 215, 189 A.2d 180, 181 (1963). And the essential prerequisites for the issuance of a preliminary injunction are: first, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct. *Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp.*, supra. Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity. And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded: *Keystone Guild, Inc. v. Pappas*, 399 Pa. 46, 159 A.2d 681 (1960), and *Herman v. Dixon*, 393 Pa. 33, 141 A.2d 576 (1958)."

*Id.*, 471 Pa. at 6–7, 369 A.2d at 1166–67, quoting *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 181, 207 A.2d 768, 770 (1965). Additionally, the concern of the courts for the public welfare results in a close judicial scrutiny of restraints on physicians because of the value of their services to the community, 14 Williston on Contracts, § 1639 (Jaeger ed. 1972) at p. 114.[1]

 Unless there were "apparently reasonable grounds" for the trial court to believe that it was presented with a

---

1. It should also be noted that the United States Supreme Court has been increasingly harsh toward anticompetitive practices in the learned professions. *See, e. g., National Society of Professional Engineers v. United States*, 435 U.S. 679, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978); *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975).

situation of "urgent necessity", it should not have issued the preliminary injunction. The two most important factors to be taken into account in this determination are first, whether an immediate and irreparable harm is actually threatened, and second, whether greater harm is caused by issuing the injunction than by refusing it. This limitation on the hearing court's exercise of its equitable powers is warranted because the relief is being sought prior to a final determination on the merits of the case and without a complete development of all of the facts upon which a final judgment will depend. Applying this formula to the record before us, we are convinced that greater harm is worked by the issuance of this injunction than would result from its denial, and that Orthopedic has failed to establish immediate and irreparable injury that could not be subsequently compensated in damages.

We start our analysis with *Herman v. Dixon*, 393 Pa. 33, 141 A.2d 576 (1958), whose facts closely resemble those before us. There, defendant physician was brought to Pottsville to practice obstetrics with the plaintiff, a physician with an established obstetrics practice in the area.

The defendant later left the plaintiff's employ and set up his own practice of obstetrics in Pottsville, in violation of a covenant not to compete in his employment contract. This Court reversed the issuance of a preliminary injunction where the trial court refused to permit the defendant to cross-examine the plaintiff as to whether the plaintiff's income had decreased, or his practice had been damaged, and whether the defendant had used confidential information or had solicited any of the plaintiff's patients. Because the record before it was devoid of this information, the *Herman* Court held that the plaintiff had failed to establish "such urgent necessity for the prevention of irreparable harm . . . as would justify the peremptory relief awarded." *Id.*, 393 Pa. at 37, 141 A.2d at 578.

The present case is markedly similar. The court below failed to allow defendant to introduce into evidence the plaintiff's financial records, thereby preventing Dr. Burns

from showing whether Orthopedic had suffered financially from Dr. Burns' practice in the prohibited geographic area. On the other hand, where the record in *Herman* failed to indicate whether plaintiff's practice had been damaged, in the instant case, the president of Orthopedic testified that he was sure that the number of patients treated by Orthopedic had not changed despite Dr. Burns' independent practice. Additionally, not only has Dr. Burns not solicited the patients of his former employer, the record indicates, and the trial judge acknowledged, that Dr. Burns actively counseled his former patients to remain under the care and treatment of Orthopedic even after he began his independent practice.[2]

The trial court relied heavily upon our recent case of *John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 369 A.2d 1164 (1977), where we affirmed the issuance of a preliminary injunction to enforce a covenant not to compete in a salesman's employment contract. In that case, the plaintiff was able to demonstrate actual damages of only $427.00 and the defendant claimed that irreparable harm had not been shown so as to justify a preliminary injunction. In rejecting defendant's contention we said:

> *This reasoning however, ignores the nature of the violation herein involved.* It is not the initial breach of a covenant which necessarily establishes the existence of irreparable harm but rather the threat of the unbridled continuation of the violation and the resultant incalculable damage to the former employer's business that constitutes the justification for equitable intervention.

* * * * * *

2. In a similar situation, the New York courts have held that in the absence of solicitation of the employer's customers by the former employee, a covenant not to compete will ordinarily not be enforced where there is nothing special about the character of the services rendered and there are no trade secrets or unfair dealings. *Lantieri Beauty Salon v. Yale*, 169 Misc. 547, 7 N.Y.S.2d 984 (1938). In determining the uniqueness of services, " 'more must . . . be shown to establish such a quality than that the employee excels at his work or that his performance is of high value to his employer.' " *Frederick Chusid & Co. v. Marshall Leeman & Co.*, 279 F.Supp. 913 (S.D.N.Y.1968).

The covenant seeks to prevent more than just the sales that might result by the prohibited contact but also the covenant is designed to prevent a disturbance in the relationship that has been established between appellees and their accounts through prior dealings. *It is the possible consequences of this unwarranted interference with customer relationships that is unascertainable and not capable of being fully compensated by money damages.*
*Id.,* 471 Pa. at 7, 8, 369 A.2d at 1167 (emphasis added).

The trial court interpreted this language to mean that the mandate of *Herman v. Dixon,* supra, requiring evidence of irreparable injury to the plaintiff, need not be followed. In so doing, the trial court misunderstood the thrust of our reasoning in *Sling Testing.* The *Herman* and *Sling Testing* cases are not in conflict. *Herman* states the threshold evidentiary requirement that must be met before a preliminary injunction may be issued: actual proof of irreparable harm. *Sling Testing* supplements *Herman* in those cases where the plaintiff's proof of injury, although small in monetary terms, foreshadows the disruption of established business relations which would result in incalculable damage should the competition continue in violation of the covenant. No reasonable interpretation of *Sling Testing* justifies the conclusion that it was intended to diminish the force of the *Herman* opinion. Rather, *Sling Testing* is supportive of the *Herman* rationale. That rationale governs this case where the trial court refused to put plaintiff to his proof of irreparable injury and merely presumed irreparable injury from the nature of the business, and the breach of the covenant.

The record fails to indicate that Orthopedic incurred irreparable injury from Dr. Burns' independent practice. Each of Dr. Burns' four physician witnesses testified that they experienced considerable delays in obtaining appointments for their patients with Orthopedic's doctors. These delays ranged from four weeks to four months. Additionally, these witnesses acknowledged that there is a shortage of orthopedic specialists in Lawrence County. Orthopedic was at-

tempting to serve more patients than it could possibly accommodate. This is quite unlike the normal commercial situation in which there are only a limited number of prospective clients and the alleged breach significantly affects the share of the former employer. Here, the potential pool of clients far exceeds the appellee's ability to serve them. Under these circumstances it is difficult to find any irreparable injury wrought upon the appellee by the appellant.

One of the factors to be considered in reviewing the issuance of an injunction enforcing an anticompetitive employment covenant is the effect of the action upon the interests of society as a whole. Consequently, when the courts of other jurisdictions have been presented with this question, their analysis has focused upon the number of practitioners in the area involved. In *Odess v. Taylor*, 282 Ala. 389, 211 So. 805 (1968), for example, because of a shortage of ear, nose, and throat specialists in the area, the court held that it would be adverse to the public interest to enjoin the defendant physician from practicing this specialty in the area mentioned in the covenant not to compete in his employment contract. In the following cases, the courts upheld and enforced the restrictive covenants because there was a *sufficiency of physicians already practicing in the area* : *Middlesex Neurological Associates, Inc. v. Cohen*, 3 Mass.App. 127, 324 N.E.2d 911 (1975) (neurosurgeon enjoined from practicing his specialty where area did not appear to need additional neurologist); *Horne v. Radiological Health Services*, 83 Misc.2d 446, 371 N.Y.S.2d 948 (1975) (covenant not to compete enforced where there appeared to be sufficient radiologists in the county and there appeared to be no adverse impact on the public); *Cogley Clinic v. Martini*, 253 Iowa 541, 112 N.W.2d 678 (1962) covenant not to compete enforced against orthopedic surgeon where there were over 460 physicians, including many specializing in orthopedic surgery, in the area included within the covenant); *Foltz v. Struxness*, 168 Kan. 714, 215 P.2d 133 (1950) (where there was a recent influx of ten additional physicians into the city covered by the covenant not to compete); *Wilson v. Gamble*,

180 Miss. 499, 177 So. 363 (1937) (covenant enforced against physician where the number of physicians in the city was sufficient for the rendition of medical services to the citizens thereof and of its vicinity).

In an era where the availability of and the rising cost of medical services are matters of national concern, the law must consider the impact of the enforcement of these non-competitive clauses upon the problem. Paramount to the respective rights of the parties to the covenant must be its effect upon the consumer who is in need of the service. This is of particular significance where equitable relief is being sought and the result of such an order or decree would deprive the community involved of a desperately needed service.

In the case before us all of the defendant's witnesses, including three physicians and a thoracic-orthopedic-plastic surgeon, testified that there was a shortage of orthopedic specialists in Lawrence County.

This factor, taken together with the considerable delay suffered by patients wishing orthopedic treatment from the plaintiffs establishes a definite harm to the public interest by the issuance of a preliminary injunction by the trial court in this instance. On this record we are constrained to find that the chancellor acted without reasonable grounds in entering the preliminary injunction.

The order of the Superior Court affirming the decree of the Court of Common Pleas of Lawrence County is reversed and the preliminary injunction is dissolved. Each party to bear own costs.

EAGEN, C. J., and LARSEN, J., concurred in the result.

ROBERTS, J., filed a dissenting opinion in which O'BRIEN, J., joined.

ROBERTS, Justice, dissenting.

I dissent. Time and time again, this Court has emphasized the limited scope of review in appeals from decrees granting or denying a preliminary injunction. In *Bryant*

*Co. v. Sling Testing and Repair Co.*, 471 Pa. 1, 369 A.2d 1164 (1977), this Court reaffirmed that:

> " ' "The scope of our review on an appeal from a decree either granting or denying a preliminary injunction is to examine the record only to determine if there were any *apparently reasonable grounds* for the action of the court below. . . ." *Lindenfelser v. Lindenfelser*, 385 Pa. 342, 343–44, 123 A.2d 626, 627 (1956).' "

*Bryant Co. v. Sling Testing and Repair Co.*, 471 Pa. at 6, 369 A.2d at 1166–67, quoting *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 181, 207 A.2d 768, 770 (1965). Accord, *Sidco Paper Co. v. Aaron*, 465 Pa. 586, 351 A.2d 250 (1976). The Court of Common Pleas of Lawrence County found that a preliminary injunction was necessary to prevent irreparable harm and appellee's evidence of its business relationship amply supports this determination. This Court should therefore affirm the order of the Superior Court affirming the decree of the Court of Common Pleas.

O'BRIEN, J., joins in this dissenting opinion.