## Bensalem Township v. Salem Harbour Joint Venture

C. P. of Bucks County, no. 1844-09-5.

*Henry F. Huhn,* for plaintiff.
*Steven A. Arbittier,* and *William E. Benner,* for Salem Harbour, Sidel and Wexler.
*Edward C. Mengel,* for Commonwealth.

RUFE, *J.,* May 27, 1981—Defendant, Salem Harbour Joint Venture, is the owner of a large apartment complex in plaintiff township, and is in the process of converting said complex to condominium ownership. Defendant, Commonwealth Land Title Insurance Company, is insuring all of the condominium titles acquired by purchasers from defendant, Salem Harbour. Plaintiff township seeks to enjoin the further sale of condominium units, and the title insurance thereof by Commonwealth, as violative of the township subdivision ordinance. Stipulated facts and briefs were submitted to the court, whereupon we denied the injunction motions, and dismissed plaintiff's complaint upon defendants' preliminary objections in the nature of a demurrer. Plaintiff has appealed this order to the Commonwealth Court, whereupon we prepare this opinion pursuant to Pennsylvania Rule of Civil Procedure 1925.

The stipulated facts established, *inter alia,* that Salem Harbor is a complex composed of 813 midrise and garden apartments with a club house, golf course, tennis courts, swimming pools and a gar-

den club. The original site plan thereof was approved by the township on June 15, 1966. On October 19, 1979, appropriate documents to convert the complex to condominium ownership under the Pennsylvania Unit Property Act[1] were recorded in the Bucks County Recorder of Deeds Office.

Condominium conversion sales began in January, 1980, supported by an intensive advertising campaign. Within a very short time over 300 persons made deposits for units as they might subsequently become available because present tenants were given the prior opportunity to acquire their presently occupied units. On February 4, 1980, the first five units were actually conveyed, and a sixth on March 17, 1980.

No subdivision or land development plan was ever filed with plaintiff township in connection with the condominium conversion. In addition, no application was ever filed with the township zoning officer for zoning classification certification on legality of the existing use as allegedly required by the Township Ordinance no. 211, and finally, no application was ever filed with the township manager for a certification that there were no notices of uncorrected violations of the housing, building, safety, or fire ordinances of the township, as also allegedly required by Ordinance No. 211. On January 21, 1980, and January 24, 1980, the fire chief and electrical inspector respectively made inspections of the apartment complex and notified the owners of several alleged violations found, whereupon the owners notified all prospective owners of such notification and that they were in the process of rectifying the violations.

Commonwealth Land Title Insurance Company

1. Act of July 3, 1963, P.L. 196, 68 P.S. §700.101 et seq.

is listed in the sales documents as the title insurer of all condominium titles to be purchased, and in fact has insured the titles transferred prior to the instant action.

## INJUNCTIVE RELIEF

This court denied plaintiff township's motion for preliminary and permanent injunctions after finding that "Plaintiff has an adequate remedy at law; that no immediate or irreparable harm that is not compensable by appropriate monetary damages is likely to occur in the absence of an injunction, and that injunctive relief is not clear and manifest."

The guidelines for granting injunctions have long since been established: "And the essential prerequisites for the issuance of a preliminary injunction are: first, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct. (Citations omitted). Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity. And unless plaintiff's right is clear and the wrong is manifest, a preliminary injuction will not generally be awarded: Keystone Guild, Inc. v. Pappas, 399 Pa. 46, 159 A. 2d 681 (1960); and Herman v. Dixon, 393 Pa. 33, 141 A. 2d 576 (1958)." New Castle Orthopedic Associates v. Burns, 481 Pa. 460, 464, 392 A. 2d 1383 (1978).

We note that the stipulation of facts makes no reference whatsoever to any immediate and irreparable harm to plaintiff township whether the

injunction is granted or not. Assuming arguendo that the township is seeking to protect its residents who are present tenants in the apartment complex, there is no reference in the facts to any detrimental effect on any of them, and in any event they would have their lease remedies at law for their protection. Similarly, assuming arguendo that the township seeks to protect prospective purchasers of the converted condominium units, it is apparent that such purchasers would have their contract remedies at law which they could further insure with title insurance.

Plaintiff township in its brief does make passing reference to the Pennsylvania Municipalities Planning Code provision empowering "municipalities to bring actions to restrain the use of land in violation of their ordinance enacted pursuant to the Act."[2] However, since this section refers to actions regarding the *use of land* rather than the ownership thereof, and the present condominium conversion does not contemplate a single change in the actual *use* of the land, i.e., no new walls, or structures, no new boundary lines or subdivision not previously approved, no new parking areas or other ancillary land uses not already existing, and no additional or different size living units than those established and previously approved, we fail to see the need for equitable relief, and particularly any urgency for such relief.

Similarly, as to the second requirement for obtaining injunctive relief (that greater injury would result by refusing it than by granting it), we note again that plaintiff township has not shown any injury whatsoever, much less greater injury, by refusing the injunction than by granting it.

2. Act of July 31, 1968, P.L. 805, 53 P.S. §10617.

As to the third element, restoring parties to the status quo, we observe that as to the township the use of the land will be identical after the conversion as it was before. There is no status quo to be maintained for there are no changes in the use of the land contemplated, and we quickly observe that should any structural or use changes begin then plaintiff's injunctive relief might be warranted. It appears that the only change contemplated is in the form of ownership of the units, from the present leasehold for stated period, to a more permanent fee title ownership for each unit, together with joint ownership arrangement in the common ground.

Finally, as will be pointed out subsequently herein, we do not find that the activity sought to be restrained is actionable, nor that plaintiff's right to injunctive relief is clear and manifest. On the contrary, there is no basis for injunctive relief whatsoever.

## CONDOMINIUM CONVERSION AS SUBDIVISION VIOLATION

There is no question, as plaintiff township urges, that a municipality has the power and authority to regulate the establishment and development of condominiums through its zoning, land development and subdivision ordinances.[3] Indeed if the present tract in question was bare ground and defendants sought to construct a condominium project thereon, all of the township's relevant ordinances would indeed be applicable. However, the tract is not bare ground. All of the structures existing on the tract were erected pursuant to the township's approval as being in compliance with all of

---

3. Pennsylvania Municipalities Planning Code, 53 P.S. §10107(11).

the township's regulatory ordinances. Thereafter, we conclude that a condominium conversion without a redivision of any boundary lines or change of any existing structures does not constitute a new subdivision subject to the municipality's regulation: Borough of Brookhaven v. Iacobucci, 69 D. & C. 2d 190 (1974), Summit Township v. Dor-al Land Co. and McBride, 16 Crawford 132 (1978). Such a condominium conversion merely constitutes a change in the form of ownership of previously approved structures already contemplated to be subdivided along the same boundary lines, and with the same commonly owned areas to remain in common ownership. We further agree with the Brookhaven and Summit holdings, supra, that the municipality authority to regulate land subdivision, development and use, once exercised, does not extend thereafter to the form of the ownership of the integral parts thereof: Kaufman and Broad v. West Whiteland Board of Supervisors, 20 Pa. Commonwealth Ct. 116, 340 A. 2d 909 (1975); and Dublin Properties v. Upper Dublin Township, 21 Pa. Commonwealth Ct. 54, 342 A. 2d 821 (1975).

Plaintiff township has referred us to Goldstein v. Upper Merion Township, 44 Pa. Commonwealth Ct. 201, 403 A. 2d 211 (1979), and In re Freid-El Corp., 34 Pa. Commonwealth Ct., 341, 383 A. 2d 1286 (1978), as authority for the contrary position that the municipality may regulate the form of ownership of approved land developments. In Goldstein, the owner of a carwash and beverage distributorship located in a shopping center under a lease with a purchase option sought to exercise his option to buy without going through the township zoning, subdivision or land development procedures citing the above quoted principle that such ordinances apply only to uses and not to forms of

ownership. The Commonwealth Court, in deciding the procedural question only, held that a declaratory judgment action was not the appropriate procedure for raising such a question, that the Municipalities Planning Code provided the exclusive statutory remedy for such problems. We specifically note that there was no indication in the opinion that the leased area proposed to be subdivided out had ever been through the township's ordinance procedures as is the case here.

Similarly, the Fried-El case is not supportive of plaintiff township's position for it only stands for the proposition that when converting existing non-conforming leased townhouses into individual units for sale, subdivision ordinance approval, where not previously obtained, must be applied for and if non-complying may require variance application. We find both the Goldstein and Fried-El cases completely consistent and compatible with our holding in this case.

## ORDINANCE NO. 211

Plaintiff township's Ordinance no. 211 requires that a seller of real estate insert in agreements of sale provisions relating to zoning compliance and that there are no uncorrected violations of township ordinances. In addition, "at or prior to the time of settlement" the seller must supply the buyer with certifications of zoning violations and notices of uncorrected ordinance violations. Finally, Ordinance no. 211 provides for summary criminal prosecution for violations of the ordinance. We deem that to be the appropriate remedy for any such alleged violations, not the injunctive relief sought in this action.

## COMMONWEALTH LAND TITLE INSURANCE COMPANY[4]

In our order, presently on appeal, we sustained the preliminary objection of Commonwealth Land Title Insurance Company in the nature of a demurrer for failure of plaintiff township to state a cause of action against it. Plaintiff has not offered any further support for its position except to point out that Commonwealth has not challenged the specificity with which its alleged fraud is pleaded and therefor the bare allegation of its involvement in a "conspiracy to perpetrate a fraud" should now stand and the township hopes it may be able to find something by discovery.

However, from the stipulation we note that Commonwealth's only involvement in the case is to issue title reports and insure the title of any units bought from Salem Harbour Joint Venture. If the township's position regarding the illegality of sale of units is correct, then Commonwealth, as the title insurer of those units, is taking an enormous risk. We fail to see how that rises to the level of a "conspiracy to perpetrate a fraud." Furthermore, Commonwealth is in the title insurance business, a perfectly legal and proper enterprise, and nothing in the complaint charges or accuses Commonwealth of doing anything other than issuing title insurance policies, albeit in the face of plaintiff's legal conclusion that is apparently contrary to Commonwealth's as to the validity of those titles. Such is the nature of risks that insurance companies take every day. There is clearly no cause of action stated warranting injunctive relief.

---

4. Hereinafter "Commonwealth."

For the foregoing reasons this court entered the order presently on appeal by the plaintiff township.