556 A.2d 940

Sacred Heart Medical Center, Inc. *v.* Delaware County, Pennsylvania, and Delaware County Council and Delaware County Emergency Health Services Council, Inc. and Crozer-Chester Medical Center. Delaware County, Pennsylvania, and Delaware County Council, Appellants.

Sacred Heart Medical Center, Inc. *v.* Delaware County, Pennsylvania, and Delaware County Council and Delaware County Emergency Health Services Council, Inc. and Crozer-Chester Medical Center. Delaware County Emergency Health Services Council, Inc., Appellant.

Sacred Heart Medical Center, Inc. *v.* Delaware County, Pennsylvania, and Delaware County Council and Delaware County Emergency Health Services Council, Inc. and Crozer-Chester Medical Center. Crozer-Chester Medical Center, Appellant.

Sacred Heart Medical Center, Inc. *v.* Delaware County, Pennsylvania, et al. Crozer-Chester Medical Center, Appellant.

Sacred Heart Medical Center, Inc. *v.* Delaware County et al. Delaware County et al., Appellants.

Argued December 16, 1988, before Judges PAL-LADINO and SMITH, and Senior Judge KALISH, sitting as a panel of three.

*Michael J. Ehling,* Assistant County Solicitor, with him, *Francis P. Connors,* County Solicitor, for appellants, Delaware County, Pa., Delaware County Council, and Delaware County Emergency Health Services Council, Inc.

*Donald T. Petrosa,* with him, *John W. Wellman,* for appellant, Crozer-Chester Medical Center.

*Garland D. Cherry, Sr., Cherry, Ferrara, Mutzel & Belefonte,* for appellee, Sacred Heart Medical Center, Inc.

*Richard L. Hughey,* with him, *James R. Flick,* for Amicus Curiae, Boothwyn Fire Company.

OPINION BY JUDGE PALLADINO, April 3, 1989:

Crozer-Chester Medical Center (CCMC), Delaware County and Delaware County Council (County) and the Delaware County Emergency Health Services Council (EHS Council) (collectively Appellants) appeal from an order of the Court of Common Pleas of Delaware County, which granted Sacred Heart Medical Center's (Sacred Heart) motion for a preliminary injunction to enjoin CCMC, the County and the EHS Council from removing Sacred Heart as the primary ambulance service to be dispatched in response to advanced life support (ALS) ambulance calls in Upper Chichester Township, Delaware County.

This case was precipitated by the decision of the Boothwyn Fire Company (located in Upper Chichester) to no longer staff its own ambulance and respond to basic life support (BLS) ambulance calls.[1] Boothwyn, however, still desired to operate an ambulance service. In order to accomplish both objectives, Boothwyn decided to purchase a new ambulance and seek a hospital to provide qualified personnel to staff it. Boothwyn asked both CCMC and Sacred Heart to make a proposal to provide ambulance crews. Boothwyn would retain responsibility for maintaining the ambulance. The chosen hospital would equip and staff the ambulance to be able to respond to both BLS and ALS ambulance calls on a 24 hour a day basis. Boothwyn accepted CCMC's proposal[2]

---

[1] *See infra* note 7 for definitions of BLS and ALS.

[2] Sacred Heart's proposal contained the same terms as CCMC's. Boothwyn testified that at a meeting with Sacred Heart after the proposals were submitted, Sacred Heart wanted to change the terms and provide the ambulance. Boothwyn rejected this change primarily because Sacred Heart would not indicate on the ambulance that Boothwyn was involved nor permit Boothwyn to have input into the ambulance operation. December 15 and 16, 1987 hearing, N.T. at 191-196.

and approved a contract with CCMC on July 1, 1987. Sacred Heart, which had for a year stationed an ambulance of its own at the Boothwyn firehouse and provided ALS ambulance service to Upper Chichester Township, immediately withdrew their ambulance and stationed it at the Ogden Fire Company.[3]

On July 2, 1987, Boothwyn sought endorsement for the contract from the Upper Chichester Board of Commissioners. The Commissioners, at their July 9, 1987 meeting, unanimously voted to recognize Boothwyn as the ALS-BLS ambulance service for Upper Chichester.[4] Thereafter Boothwyn sought approval from the EHS Council to change the designated ALS ambulance service

---

[3] Ogden Fire Company is also located in Upper Chichester Township and also provides BLS ambulance service in the Township.

[4] Section 1502 of The First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §56534, states that the corporate powers of first class townships include the power:

> To acquire and to operate and maintain motor vehicles for the purposes of conveying sick and injured persons of such township and the vicinity to and from hospitals, and, for such purposes, to appropriate and expend moneys of the township or to appropriate money annually towards ambulance and rescue and life saving service, and to enter into contracts relating thereto. All appropriations of money heretofore made and contracts heretofore entered into by any township for such service are hereby validated and confirmed.

In Delaware County, the municipalities historically have delegated, by resolution, this authority to local fire companies. The local fire companies determine how to provide this service. Since the organization of the EHS Council, the ALS ambulance service chosen by the local fire company must be approved by the EHS Council, whereas the BLS ambulance service choice remains solely with the local fire companies. The EHS Council requires local municipality approval as a prerequisite to consideration of a request for approval of a change in the ALS ambulance service provider. Approval will not be granted unless the new service is medically equivalent or better. December 7, 1987 hearing, N.T. at 31-41; December 15-16 hearing, N.T. at 101-112, 152.

for Upper Chichester from Sacred Heart to Boothwyn; approval was granted at the Council's November meeting.[5]

Sacred Heart, on December 1, 1987, filed a complaint in equity with the trial court, challenging the EHS Council's approval of the replacement of Boothwyn for Sacred Heart as the ALS ambulance service for Upper Chichester on the basis (1) that CCMC improperly solicited Boothwyn to change its method of providing ambulance service and (2) that the actions taken to replace Sacred Heart as the ALS ambulance service were not in conformity with the Emergency Medical Services Act (EMS Act), Act of July 3, 1985, P.L. 164, 35 P.S. §§6921-6938.[6] Sacred Heart, at the same time, also filed a

---

[5] After receiving Boothwyn's request the Council appointed a committee to study the proposal. The committee report was delivered at the November meeting, which was public, and an open discussion of the proposal was conducted prior to the grant of approval. *See supra* note 4.

[6] The EMS Act repealed and substantially reenacted the Emergency Medical Services Act, Act of November 30, 1976, P.L. 1207, *as amended,* 35 P.S. §§6901-6911. The 1985 EMS Act added sections setting up a trauma foundation to accredit trauma centers and a state advisory council to assist the Department of Health in preparing a statewide emergency medical services development plan. The 1985 EMS Act also sets out criteria for emergency medical services personnel and minimum standards for ambulance service. Section 3 of the EMS Act, 35 P.S. §6923, contains the following pertinent definitions:

> **Advanced life support**—The advanced prehospital and interhospital emergency medical care of serious illness or injury by appropriately trained health professionals and certified EMT-paramedics.
>
> **Basic life support,**—The prehospital or interhospital emergency medical care and management of illness or injury performed by specially trained and certified or licensed personnel.
>
> **Emergency medical services council**—A nonprofit incorporated entity or appropriate equivalent whose function is to plan, develop, maintain, expand and improve emergency

petition for a preliminary injunction to enjoin: (1) the County and the EHS Council from approving Boothwyn's proposal to substitute CCMC for Sacred Heart as the ALS ambulance service in Upper Chichester;[7] (2) the County and the EHS Council from removing Sacred Heart as the ALS ambulance service for Upper Chichester on the list at the County dispatch facility;[8] and (3) CCMC from interfering with contractural relationships between Sacred Heart and other fire companies where Sacred Heart currently provides ambulance service. The trial court, on December 22, 1987, granted the preliminary injunction and enjoined the County and the EHS Council to the extent requested in (1) and (2).[9]

On appeal to this court, Appellants contend that the trial court's grant of Sacred Heart's request for a preliminary injunction was improper because Sacred Heart did

---

medical services systems within a specific geographical area of this Commonwealth and which is deemed by the department [of Health] as being representative of the health professions and major public and voluntary agencies, organizations and institutions concerned with providing medical services.

[7] We note that the change would not be to CCMC but to Boothwyn. While CCMC is staffing the ambulance, Boothwyn is the entity seeking to provide ALS ambulance service to Upper Chichester.

[8] Emergency services calls for 43 of the 49 municipalities in Delaware County are received at the County dispatch center located in the basement of the Delaware County court house. December 7, 1987 hearing, N.T. at 26. When calls are received for ambulance service, they are received on specific phone lines for the area from which the call is received. The dispatcher then checks the card for that area to determine what ambulance service is to be "tapped." This will depend on whether BLS or ALS ambulance services are needed. Backup ambulance services are listed in the order they are to be contacted if the primary ambulance service does not respond within a given time. *Id.* at 27-29, 43.

[9] On December 23, 1987, the trial court amended the order to require Sacred Heart to post a $1000 bond.

not demonstrate the requirements necessary for a preliminary injunction.[10] Our scope of review on an appeal from the grant of a preliminary injunction is to examine the record to determine if there were any apparently reasonable grounds for the grant. *Mazzie v. Commonwealth*, 495 Pa. 128, 432 A.2d 985 (1981).

The standard for granting a preliminary injunction is as follows:

> '[F]irst, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct.' ...

*City of Philadelphia v. District Council* 33, 112 Pa. Commonwealth Ct. 90, 101, 535 A.2d 231, 236 (1987) (quoting *New Castle Orthopedic Associates v. Burns*, 481 Pa. 460, 464, 392 A.2d 1383, 1385 (1978)). The Pennsylvania Supreme Court has stated that the two most important requirements are the first and the second. *New Castle Orthopedic Associates*. The record in this case contains no evidence to support either of these requirements.

---

[10] Appellants also contend that: (1) the underlying complaint in this case fails to name indispensable parties, Boothwyn and Upper Chichester; and (2) a complaint that the EMS Act was not complied with should be made to the Department of Health and not to the trial court. Both of these arguments appear to have merit. However, they pertain to the complaint and not to the propriety of the preliminary injunction. Appellants also challenge the trial court's determination that the EHS Council was not properly constituted and did not act in conformity with the EMS Act. Our review of the EHS Council's bylaws and the EMS Act leads us to the conclusion that these arguments also have some validity, but because these issues go to the merits of the case, we decline to address them at this time. *See Mazzie v. Commonwealth*, 495 Pa. 128, 432 A.2d 985 (1981).

With respect to the harm that Sacred Heart would suffer if it were replaced as the primary ALS ambulance service in Upper Chichester, Sacred Heart argues that it met this requirement with the testimony of its chief executive officer, Sister Mary Margaret Jackson, "relating to the annual investment of $900,000 in its emergency facilities, its three ambulances, and its 32 personnel." Sacred Heart brief at 15. This clearly does not demonstrate immediate and irreparable harm. Sister Mary Margaret's testimony shows that Sacred Heart provides ambulance service to a number of other areas:

Q: Sister, what is the full extent of Sacred Heart's coverage area? Presently.

A: Presently, the western half of the City of Chester, the communities which border Chester on the western end of Delaware County, which includes Upper Chichester, Lower Chichester, Marcus Hook, Trainer, Lynnwood, those areas. We also respond to calls from Southern New Jersey.

December 15-16, 1987 hearing, N.T. at 39. No evidence was presented to show what portion of this service consisted of the ALS ambulance service provided to Upper Chichester. Nor was there any evidence presented to show what impact the removal of Sacred Heart as the primary ALS ambulance service provider for Upper Chichester Township would have on Sacred Heart's emergency operations.

The second requirement that must be met in order to obtain a preliminary injunction is to show that a greater injury will result by refusing the injunction than by granting it. The trial court concluded that the change in ambulance service provider would be prejudicial to the community and apparently considered this to constitute a greater injury than not permitting the change to be

made. The record contains no reasonable grounds to support a conclusion that the public will be harmed by the change.

Boothwyn testified, and Sister Mary Margaret agreed, that Boothwyn was experiencing difficulty in providing BLS ambulance service to Upper Chichester in a timely fashion. *Id.*, N.T. at 13, 191-92, 212. Sister Mary Margaret also agreed that the change would *improve* the response time to BLS ambulance calls. *Id.*, N.T. at 34. Sacred Heart makes no argument that the Boothwyn ambulance, staffed by CCMC, would not be able to respond just as promptly and capably as Sacred Heart. As evidence that the change would cause greater harm than leaving the current system in place, Sacred Heart alludes to the fact that it is closer to Upper Chichester than CCMC. However, Dr. Donald DeSantis, head of CCMC's trauma center and a prior executive director of the EHS Council, testified that individuals requiring ambulance service are transported to the closest hospital capable of handling the individual's medical condition. *Id.*, N.T. at 251-52. Even Sister Mary Margaret testified that ambulance personnel should take patients to the closest appropriate hospital, taking into consideration the patient's preference. *Id.*, N.T. at 72. Rather than containing evidence that greater harm will result if the injunction were refused, the record shows that the BLS ambulance service would be greatly improved and that ALS service would be comparable.

The trial court also indicated that a preliminary injunction was appropriate here because the method by which the change in ALS ambulance service was approved by the EHS Council was contrary to the dictates of the EMS Act. Even assuming that the trial court is correct that Sacred Heart will prevail on this point when the merits of the case are considered, that is not a

reasonable ground on which to issue a preliminary injunction. A trial court may not issue a preliminary injunction, no matter how great the likelihood of success on the merits, if the record does not contain any apparently reasonable grounds "for the trial court to believe it was presented with a situation of 'urgent necessity.' " *New Castle Orthopedic Associates*, 481 Pa. at 464-65, 392 A.2d at 1385. The two most important factors in determining if a situation of urgent necessity exists are "whether an immediate and irreparable harm is actually threatened, and ... whether greater harm is caused by issuing the injunction than by refusing it." *Id.* at 465, 392 A.2d at 1385. As previously noted, the record in this case contains no evidence of immediate and irreparable harm and indicates that the issuance of the preliminary injunction could cause greater harm to the public than refusing to issue the preliminary injunction.

Accordingly, the order of the trial court issuing a preliminary injunction in this case is reversed.

## ORDER

AND NOW, April 3, 1989, the order of the Court of Common Pleas of Delaware County in the above-captioned case is reversed.