## Cytryn v. Cardiovascular Associates of Chambersburg Ltd.

*Thomas J. Finucane,* for plaintiff.

*Joseph P. Hafer* and *Kevin E. Osborn,* for defendant Chambersburg Hospital.

*Christopher Matson,* for defendant Cardiovascular Associates of Chambersburg Ltd.

KAYE, *J.,* February 14, 1992—The instant proceeding arises out of an action for declaratory judgment brought by Richard A. Cytryn against Cardiovascular Associates of Chambersburg Ltd. in which the court is asked to interpret various aspects of an employment agreement dated January 30, 1991, between Dr. Cytryn and Cardiovascular Associates. We specifically are asked to determine if Dr. Cytryn is entitled to a bonus of 30 percent of Cardiovascular Associates' net income in excess of $498,082[1] and whether a restrictive covenant and liquidated damages clause contained therein are enforceable.

---

1. An amount which plaintiff computes on a pro-rated formula for the length of time he was employed by defendant, and which represents 30 percent of the net income after receipt by the principals in defendant of $900,000 in net income.

In connection with the foregoing proceeding, plaintiff caused a subpoena duces tecum and deposition notice to issue on Norman Epstein, president of Chambersburg Hospital. The subpoena and deposition notice seek to compel Mr. Epstein to provide the following documents and data:

(1) all minutes (including attachments) of the Cardiac Services Task Force for the past 24 months;

(2) copies of all documents provided to the Cardiac Services Task Force in the past 24 months.

(3) all notes and paperwork of the Cardiac Services Task Force concerning complaints by physicians involving cardiology services for the past 24 months;

(4) all notes and documents prepared in the last 24 months concerning why local physicians refer patients to cardiologists outside the Chambersburg Area;

(5) Chambersburg Hospital staffing plan for cardiology services; and

(6) all minutes for the past 24 months of the Family Practice Group.

Thereafter, a motion was filed in behalf of Mr. Epstein, in his capacity as president of Chambersburg Hospital, and by Chambersburg Hospital, seeking relief in the nature of a protective order and stay of proceedings relative to the subpoenaed data. A hearing was held in this matter on January 29, 1992, at which time testimony was given by Mr. Epstein, and argument was presented. Counsel for the parties have provided memoranda of law relative to their respective positions, and the matter is before the court for decision. For the reasons hereafter set forth, we will grant Mr. Epstein and Chambersburg Hospital the relief sought in their motion for a protective order.

As is apparent from the foregoing, neither Mr. Epstein nor Chambersburg Hospital, is a party to this litigation, and Mr. Epstein made it abundantly clear in his testimony of the neutrality of himself and the hospital in the instant litigation. Nonetheless, plaintiff seeks to compel the disclosure of certain studies commissioned and/or conducted by Chambersburg Hospital regarding the health care needs in the Chambersburg Hospital service area. Plaintiff asserts that these data are relevant to the matter sub judice due to a holding of the Pennsylvania Supreme Court which, inter alia, considered the enforceability of a non-competition agreement contained in a physician's employment contract:

"One of the factors to be considered in reviewing the issuance of an injunction enforcing an anti-competitive employment covenant is the effect of the action upon the interests of society as a whole. Consequently, when the courts of other jurisdictions have been presented with this question, their analysis has focused upon the number of practitioners in the area involved.

"In an era where the availability of and the rising cost of medical services are matters of national concern, the law must consider the impact of the enforcement of these non-competitive clauses upon the problem. Paramount to the respective rights of the parties to the covenant must be its effect upon the consumer who is in need of the service. This is of particular significance where equitable relief is being sought and the result of such an order or decree would deprive the community involved of a desperately needed service." *New Castle Orthopedic Associates v. Burns,* 481 Pa. 460, 469, 392 A.2d 1383, 1387-1388 (1978).

Plaintiff asserts that the studies conducted or commissioned by Chambersburg Hospital would be relevant to

assist the fact-finder in assessing the applicability of the considerations set forth in *New Castle, supra,* in the instant litigation. Defendant argues that *New Castle* is not binding precedent because it was not a majority decision; the information sought is available elsewhere; and in fact plaintiff has stated that he had already received affidavits from at least 12 physicians attesting to a shortage of cardiologists in the area, thus making the information in the reports merely corroborative.

The hospital asserts that the reports either are nondiscoverable "trade secrets" or are the subject of protection under the "Peer Review Protection Act," 63 P.S. §425.1 et seq.

Prior to considering these matters, we think it appropriate to set forth our belief that in the instant proceeding, defendant does not have standing to assert an objection in its own right to disclosure of the hospital's studies.[2] While the court ultimately may be called upon to determine if the hospital data are indeed relevant to the issues presented, we think defendant can no more object to plaintiff's efforts to obtain discovery than it could prevent plaintiff from conducting any other legitimate investigation to attempt to prepare its case for trial. At this juncture in the litigation, we believe the sole consideration is whether the hospital has asserted a privilege cognizable by the law which will preclude disclosure.

In connection with its motion, the hospital's president and CEO, Norman Epstein, testified that the hospital has undertaken an effort to bring about a consensus regarding

---

2. This is stated for clarification purposes only, and is not intended to indicate that defendant took a contrary position. However, defendant did take an active role in the proceeding.

future planning for the development of Chambersburg Hospital's mission in the community that it serves. In this connection, a one and one-half day retreat was held to formulate a mission statement, and for the discussion of key factors to be addressed in the future. A number of group discussions were held, and it was agreed that confidentiality would be maintained to assure candor in the discussions.

Mr. Epstein further testified that the process is an ongoing one, and that the Hospital Board of Directors' Planning Committee has established a Cardiology Task Force to conduct a study of the current and future needs in that area of medical specialization. The task force still exists, continues to meet, and has not yet arrived at any conclusion as whether the number of cardiologists currently in practice in the hospital is adequate to fill the community needs. The only conclusion reached to date by the task force is that application should be made to the State Department of Health to establish a heart catheterization program at Chambersburg Hospital.

The task force employed, at significant cost to the hospital, professionals to assist it as facilitators and in data-gathering in areas such as the demographic characteristics of the area, need for services, market share information, etc. In the course of the process, numerous private interviews were conducted with physicians regarding cardiac services.[3] Mr. Epstein testified that the physicians who participated in this process were assured of confidentiality

---

3. As we understand it, this interview process involved quality assessment, whether there are sufficient physicians practicing this speciality in the community, and their comments generally regarding needs in this field.

in order that they would participate with candor. Finally, the information, if disclosed, could be utilized by other organizations to their advantage.

"Pennsylvania recognizes a privilege to refuse disclosure of a trade secret where the interests of justice can be served without it. The term 'trade secret' is applied in this context to such things as secret processes, formulas and techniques, as well as names of customers and customer lists." Poulin and Packel, *Pennsylvania Evidence*, §515 (1987). (footnotes omitted)

Because of the nature of a hospital's business and the unique voluntary relationship it has with most of the physicians who are necessary for its functioning, we believe that this privilege is applicable herein. A modern hospital serves both the traditional function of providing care to the sick and injured, while necessarily competing with other similarly situated providers for physicians who voluntarily associate themselves with the hospital, other professional and non-professional staff who provide vital services, and the patients whom they seek to serve. The data, of which plaintiff seeks disclosure, is clearly being developed to assure that Chambersburg Hospital stays "on top of" these issues, and appears to us to be the focus of its efforts to assure it is providing needed community services. At the same time, the disclosure of the data would make them available to competitors, current and future, and clearly could redound to the detriment of the hospital. The hospital obviously went to great effort and expense to develop the plan which is gathering data whose disclosure is sought, and we believe that its work product, intended for internal planning for future needs, is a "trade secret."

We have also considered the second prong of the issue of privilege, i.e. that which deals with whether the interests

of justice can be served without compelling disclosure. We fail to see how or why plaintiff cannot develop similar data through the use of persons expert in the field of determining whether the medical needs of a community currently are being met with extant resources. In argument, plaintiff indicated that at least 12 affidavits had been secured from physicians relative to the issue of whether the medical needs of the community in the field of cardiology currently are being met. It is apparent that plaintiff can develop the appropriate data without resort to the study prepared at the hospital's expense, and which has not been made available to either party. We conclude that the interests of justice will not be disserved by recognizing the applicability of the privilege to the instant situation.

While the foregoing is dispositive, we will add that an additional basis for the holding is the Peer Review Protection Act, 63 P.S. §425.1 et seq. In the definitional section of the Act, "peer review" is described as:

"The procedure for evaluation by professional health care providers of the quality and efficiency of services ordered or performed by other professional health care providers, including practice analysis, inpatient hospital and extended care facility utilization review, medical audit, ambulatory care review, claims review, and the compliance of a hospital, nursing home or convalescent home or other health care facility operated by a professional care provider with the standards set by an association of health care providers and with applicable laws, rules and regulations."

The Act further declares:

"The proceedings and records of a review committee shall be held in confidence and shall not be subject to

discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceeding of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof: Provided, however, that information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings."

The definitional section includes within the phrase "professional health care providers" physicians, hospital administrators and hospitals. 63 P.S. §425.2.

In the instant case, the materials sought appear to be at the heart of the confidentiality provisions of the Act: an evaluation is currently in process by a professional health care provider (Chambersburg Hospital) of independent health care providers, including defendant which have associated themselves voluntarily with the hospital to provide cardiology services. In connection with the development of the study, physicians were interviewed regarding the provision of cardiology services at the hos-

pital. These physicians were assured that their responses would be treated confidentially prior to their responding.

In conducting this study, Chambersburg Hospital was engaging in a form of peer review. In the Commonwealth, as in most other jurisdictions, peer review is recognized as beneficial to the maintenance of quality health care through the conduct of review of physicians' credentials and health care practices, generally by other physicians. *Sanderson v. Frank S. Bryan, M.D., Ltd.* 361 Pa. Super. 491, 494, 522 A.2d 1138, 1139 (1987). Without the assurance of confidentiality, it is likely that few physicians would participate in evaluations of their fellow physicians or, to the extent they did, would be less frank and open in their evaluations. One might even wonder if any formal peer review would be possible absent the assurance of the maintenance of confidentiality. The Commonwealth has adopted the cited statutory provisions which holds such "procedures and records" not to be "subject to discovery or introduction into evidence in any civil matter against a professional health care provider arising out of the matters which are the subject of evaluation and review of such committee...." 63 P.S. §425.4 This statute prohibits the discovery of the information being sought, and compels the ruling contained herein.

## ORDER OF COURT

Now, February 14, 1992, the subpoena served upon Norman Epstein on November 27, 1991, is quashed, the deposition of Norman Epstein as to the matter referred to in the opinion attached hereto is prohibited, and discovery of the documents requested in the records deposition notice dated November 27, 1991, is prohibited.